[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-11179

_____

CHRISTOPHER LEE AMERSON,

Plaintiff-Appellant,

*versus*

COMMISSIONER, GEORGIA DEPARTMENT OF
CORRECTIONS,
MICHAEL PASCHAL,
Unit Manager, Hancock State Prison,
LT UNTRAY BELLINGER,
Supervisor, Hancock State Prison,
SGT FREDRICK WILSON,
Supervisor, Hancock State Prison,
KANDI STEPHENS,
CO2 Officer, Hancock State Prison,
BRUSTAVIOUS COOPER,

CO2 Officer, Hancock State Prison,
SGT SERRIA HARRISON,
Supervisor, Hancock State Prison,
ANNETTIA ASHLEY-TOBY,
Warden, Hancock State Prison,
GEORGE IVEY, JR.
Warden of Security, Hancock State Prison,
HANCOCK SP WARDEN,
DOCTOR LIFT,
Hancock State Prison,
NURSE WARREN,
Hancock State Prison,
NURSE DAVIS,
Hancock State Prison, et al.,

Defendants-Appellees,

JEREMY FOSTON,
Chief Counselor, Hancock State Prison, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:18-cv-00376-TES-CHW

_____

Before NEWSOM, BRANCH, and BRASHER, Circuit Judges.

NEWSOM, Circuit Judge:

Christopher Amerson, a Georgia inmate, sued several prison officials under 42 U.S.C. § 1983, proceeding *pro se*. After disregarding court orders and filing several improper and repetitive motions, Amerson claimed to be incompetent on the day of his deposition and refused to participate. That was the straw that broke the camel's back—defendants moved for sanctions, and the district court dismissed his complaint with prejudice. We affirm.

I

Amerson filed his complaint in 2018, at which point he moved to proceed *in forma pauperis* and for the appointment of counsel. Pursuant to the Prison Litigation Reform Act, those motions were routed to a magistrate judge, who (1) granted Amerson's motion to proceed IFP, (2) denied his motion to appoint counsel, and (3) *sua sponte* ordered Amerson to recast his complaint, which alleged multiple claims against multiple defendants that spanned multiple years.

About two weeks later, Amerson filed his recast complaint—in accordance with the specific instructions that the magistrate judge provided—and a motion to compel discovery. The main thrust of his recast complaint was that prison officials had poisoned his food, causing him medical complications. The magistrate judge screened Amerson's recast complaint and determined that he had properly alleged claims sounding in the Eighth Amendment. The magistrate judge denied his motion to compel discovery and recommended dismissing Amerson's remaining claims without prejudice. The district court adopted the magistrate judge's report and recommendation over Amerson's objection and ordered him to file a second recast complaint.

After Amerson filed his second recast complaint, defendants filed their answers and the litigation picked up steam. In the months that followed, Amerson lodged at least 37 separate filings with the court, including: (1) ten motions to amend his complaint, each of which was denied; (2) three motions to compel disclosure or discovery, each of which was denied with explicit instructions that Amerson must first confer in good faith with the opposing party—which he never did; (3) two motions for reconsideration, both of which were denied; (4) two motions for sanctions, both of which were denied; and (5) two additional motions to appoint counsel, both of which were denied with explicit instructions not to file additional motions to appoint.

Despite that deluge of filings, discovery moved forward. Defendants filed a notice of deposition, which was formally

acknowledged by Amerson on December 3, 2019, and scheduled for December 19. Amerson showed up for his deposition on the 19th, but—notwithstanding an earlier warning "that failure to submit to a deposition may result in dismissal" of his suit, *see* Magistrate Judge's Order and Recommendation at 19 (emphasis omitted)—refused to participate.

Instead, when he arrived, he asserted that he didn't "feel competent . . . to be able to answer . . . questions." Dep. Tr. at 5. He stated that he hadn't slept in two days due to an illness that he attributed to prison officials "putting stuff . . . inside [his] meals." *Id.* He further claimed that, due to his illness, he had "turned in a sick call to the [prison] nurse and asked for an examination," but he had not received any medical attention. *Id.* So, Amerson informed defense counsel that he was not "going to be able . . . to participate competently . . . in the d[e]position," and that for defense counsel to continue the deposition would "be in bad faith." *Id.*

The defendants' lawyers probed Amerson a bit further. In response, Amerson acknowledged that he was capable of "understand[ing] the difference in the truth and a falsehood" but nonetheless confirmed that he was "refusing to answer any questions that [defense counsel] ha[d] about the case." *Id.* at 5–6. In light of that, defense counsel informed Amerson that—due to his "representation that [he was not] going to be able to go forward"—the parties would "suspend the deposition." *Id.* at 7. But before concluding, defense counsel warned Amerson that they would seek sanctions, including "dismissal of [his] case for refusing to cooperate." *Id.*

The following day, Amerson mailed the district court a request styled "Motion to Terminate Deposition," in which he explained that prison officials served him meals that "caused sever[e] headaches, repeated hot spells, and deprived [him] of any sleep" for "several days" leading up to the deposition. Amerson averred that because of that, he was "irritable" and "frustrated" and unable to "recall[] . . . dates and other stuff that he usually ha[d] no problem recalling" at the deposition. Because of his purported illness, Amerson requested that the district court suspend the deposition "long enough for [him] to get evaluated."

As promised, defendants filed a motion for sanctions due to Amerson's refusal to participate in the deposition. They asserted that, although Amerson claimed incompetence at the deposition, he had been able to recall and discuss specific dates of filings and other details about the case. Moreover, defendants produced a declaration by Amerson's prison counselor, who stated under oath that when she visited Amerson a few hours after the deposition ended, he: (1) affirmed he was feeling "okay"; (2) "was acting as he normally does"; and (3) "did not report any medical problems, sickness or lack of sleep," nor did he "report feeling as though he had been poisoned." Additionally, defendants claimed that Amerson's medical records belied his statement that he had sought a medical evaluation prior to the deposition. Accordingly, defendants requested that the district court dismiss all of Amerson's claims with prejudice. In the alternative, defendants requested that the district

court re-open discovery and award costs and fees incurred by the failed deposition attempt.

The magistrate judge issued a report recommending dismissal with prejudice. The magistrate judge acknowledged that dismissal with prejudice was an "extreme" remedy, but nonetheless concluded that it was warranted because: (1) Amerson had "persistently violated" the court's "clear and repeated instructions and warnings"; (2) he had been specifically warned that a failure to submit to a deposition "may result in the dismissal of his lawsuit"; (3) he had "manipulated the adjudicative process to abuse his opponents"; (4) his "asserted incompetency" at the deposition "was a manipulative tactic"; and (5) "the record both in this case" and another case in which Amerson was involved "demonstrate[d] that less drastic sanctions . . . ha[d] failed to break [him] of his habit of routinely engaging in abusive" litigation conduct. R. & R. at 3–5.

The district court adopted the magistrate judge's report and recommendation in full. The court emphasized that Amerson had failed to follow court orders, that he had been "clearly capable" of giving his deposition, and that he had displayed similar "bad faith" in previous litigation. Accordingly, and because "lesser sanctions . . . would be insufficient, as made evident by Amerson's willful disregard for the Court's previous orders," the court dismissed Amerson's claims with prejudice.

Amerson, now represented by counsel, appeals that dismissal. He contends that the district court reversibly erred because (1) it failed to establish that he had engaged in a "'clear pattern' of

willful disregard of a court order," and (2) it failed to "meaningfully consider whether lesser sanctions would suffice to correct the conduct at issue." Appellant's Br. at 2.

## II

Federal Rule of Civil Procedure 41(b) "authorizes a district court to dismiss a complaint for failure to prosecute or failure to comply with a court order or the federal rules." *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999) (per curiam). Similarly, Rule 37 grants the district court "broad authority" to "control discovery, including dismissal as the most severe sanction." *Id.*; *see also* Fed. R. Civ. P. 37(b)(2)(A)(v).[1]

Although the court has the authority to do so, "dismissal with prejudice . . . is an extreme sanction that may be properly imposed only when: (1) a party engages in a clear pattern of delay or willful contempt," and "(2) the district court specifically finds that lesser sanctions would not suffice." *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337–38 (11th Cir. 2005) (quotation marks and emphasis omitted). Although "findings satisfying both prongs . . . are essential before dismissal with prejudice is appropriate," those findings can be "implicit." *Id.* at 1139 (quotation marks and emphasis omitted). In some cases, "[n]o explanation o[f] why lesser

---

[1] We review "dismissals under [Federal Rules of Civil Procedure] 41 and 37 for abuse of discretion." *Gratton*, 178 F.3d at 1374. "We review the district court's findings of fact" underpinning such dismissals "for clear error." *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006).

sanctions would not have worked [is] necessary." *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993).

Moreover, "dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). That's so even "where less drastic sanctions are available." *Phillips v. Ins. Co. of N. Am.*, 633 F.2d 1165, 1168 (5th Cir. Unit B 1981).

Amerson contends that the district court erred with respect to both prongs. We divide our discussion accordingly.

## A

Amerson asserts that three independent errors undermine the district court's determination that he engaged in a pattern of willful misconduct. We address them in turn.

### 1

First, Amerson contends that the district court's statement that he failed to file a protective order to excuse his deposition is incorrect, and that he could not have filed a pre-deposition motion for a protective order. Instead, he claims that he *did* seek a protective order to postpone the deposition and that it would have been impossible to do so before the deposition.

Amerson is correct that he filed an after-the-fact motion to postpone the deposition, but the record does not support his assertion that he couldn't have done so before the fact. His alleged

illness arose (he claims) from being served poisoned meals.  He stated that his food was being poisoned "the day" after he "sign[ed] for the . . . Notice of Deposition"—on December 3, approximately two and a half weeks before his deposition occurred—and "[c]ontinually" thereafter.  Pl.'s Mot. to Terminate Dep. at 1.

Taking Amerson at his word, then, his poisoned meals rendered him incompetent from December 3 "all the way up until [he] was taken to the . . . deposition." *Id.* at 2.  Accordingly, the district court did not clearly err in determining that Amerson could have sought pre-deposition relief at any time in that window preceding his deposition.[2]

---

[2] On appeal, Amerson asserts that his competency issues were grounded in "circumstances that had arisen the night before the deposition."  Appellant's Br. at 20.  And he claims that his motion to the district court "explained" that "his situation worsened in the two days leading up to the deposition" and that his "lack of sleep intensified his existing health concerns" in that period immediately preceding his deposition.  Appellant's Reply Br. at 13.  A fair reading of Amerson's motion tells a different story.

True, Amerson stated in his motion to the district court that he "hadn't been able to sleep for over 48 hours" and that he had suffered "over 2 days of restlessness."  Pl.'s Mot. to Terminate Dep. at 2–3.  But that is not an "expla[nation]" that "his situation worsened."  Appellant's Reply Br. at 13.  Instead, those specific facts are best read in context as a "continua[tion]" of his symptoms that, he said, began on "the day following [his] signing for the . . . Notice of Deposition" and lasting "all the way up until [he] was taken" to the deposition.  Pl.'s Mot. to Terminate Dep. at 1–2.  The district court did not clearly err when it determined that the issue "could and should have been . . . raised in a pre-deposition motion for protective order."

**2**

Next, Amerson contends that the district court's conclusion that his asserted incompetency was "a manipulative tactic" is unsupported by the record. We disagree.

The court's "manipulative tactic" finding was rooted primarily in its determination that "Amerson was clearly capable of discussing and recalling other matters" while simultaneously "claiming to be incapacitated." Order Adopting R. & R. at 4; *see also* R. & R. at 5. That finding is supported by the record.

At the deposition, Amerson engaged with defense counsel for more than half an hour, during which time he was able to recall specific dates and docket numbers. Moreover, Amerson told defense counsel that he had "turned in a sick call" due to his illness. But that assertion was refuted by the prison's health administrator, who stated under oath that Amerson did not seek or receive a medical evaluation between December 15 and 21. Separately, less than three hours after his deposition ended, Amerson told his prison counselor that he was "okay" and did not mention "any medical problems, sickness or lack of sleep," nor did he "report feeling as though he had been poisoned." In fact, the counselor stated under oath that "he was acting as he normally does."

In light of that record evidence, it was not clear error for the district court to conclude that Amerson was able to testify, but alleged incompetency as a "manipulative tactic."

### 3

Finally, Amerson asserts that even if his "failure to participate in his deposition [was] willful, . . . the failure to participate in one deposition does not establish a 'pattern of willful conduct.'" Appellant's Br. at 22 (cleaned up). That premise is valid, but it is inapplicable here.

The district court did not base its pattern-of-willful-conduct determination solely on Amerson's failure to participate in the deposition. Rather, it stated that the deposition was only "the latest and most flagrant example" of a larger pattern of misconduct and abusive litigation tactics that included: (1) filing four motions to compel discovery, which he filed despite the court's repeated instructions that the motions were improper or premature; (2) filing three motions to appoint counsel, the last of which he filed despite the court's previous admonition that he should not "file additional requests for counsel"; and (3) filing myriad motions to amend his complaint, at least some of which blatantly ignored the court's earlier instructions, and which led the magistrate judge to describe Amerson as attempting "to obtain amendment by process of attrition."

★  ★  ★

The district court did not err when it determined that Amerson had engaged in a pattern of willful misconduct justifying dismissal of his case.

**B**

Amerson separately contends that the court erred because it failed to "independently and meaningfully consider whether lesser sanctions would be insufficient." Appellant's Br. at 13 (capitalizations omitted). We disagree.

The district court expressly stated that "lesser sanctions"—including "non-prejudicial dismissal" or an order "compelling Amerson to take his deposition"—"would be insufficient." It's true that the district court did not discuss in depth exactly *why* lesser sanctions wouldn't suffice. But this isn't a case in which further analysis was necessary—"some cases . . . are clear enough without the district court adding a section to its opinion to explain why lesser sanctions were not used." *Phipps*, 8 F.3d at 791. "This case is one of those cases." *Id.*

As in *Moon*, "[t]he record" in this case "supports what is implicit"—and, in places, explicit—"in the district court's decision to dismiss this case—that [Amerson] had been repeatedly and stubbornly defiant." *Moon*, 863 F.2d at 839. The record is replete with examples of Amerson's defiance—he had proven on multiple occasions that further admonition by the district court was unlikely to yield results.

Moreover, the district court *did* consider explicitly two specific lesser sanctions. It determined that neither was sufficient, and

14                    Opinion of the Court                    20-11179

that determination is supported by the record.  That was not an abuse of discretion.[3]

★   ★   ★

Amerson repeatedly defied court orders and acted in bad faith.  After being warned that his actions could result in dismissal, that's exactly what happened.  Making good on that threat of dismissal was not an abuse of discretion.  *See Moon*, 863 F.2d at 837 ("[D]ismissal upon disregard of an order, especially where the

---

[3] Amerson relies on a handful of cases that he asserts are "indistinguishable" and "require[] reversal."  Appellant's Br. at 15, 16.  We don't see it that way. Take *Mingo v. Sugar Cane Growers Co-op*, 864 F.2d 101 (11th Cir. 1989) (per curiam), for example.  That case is distinct from Amerson's because, there, the district court failed to make *any* "finding concerning the efficacy of sanctions less severe than dismissal."  *Id.* at 102–03.  Similarly, in *Betty K*, we held that the district court abused its discretion because it "failed *entirely* to find . . . that lesser sanctions were inadequate."  432 F.3d at 1339 (emphasis added).  So too in *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137 (11th Cir. 2006).  There, we held that the district court abused its discretion when it "fail[ed] to give *any* justification for its decision."  *Id.* at 1152 (emphasis added).

Those decisions stand for the proposition that the district court must make a finding that lesser sanctions are inadequate, and the court's reasoning must be sufficient "to provide meaningful review on appeal."  *Id.*  They do not require a district court to engage in a lengthy analysis explaining itself every step of the way.  Thus, because the court here explicitly stated that "lesser sanctions . . . would be insufficient" and explained, albeit briefly, why that is so—and because the record in this case demonstrates Amerson's "repeated[] and stubborn[] defian[ce]," *Moon*, 863 F.2d at 839—the court did not abuse its discretion.

litigant has been forewarned, generally is not an abuse of discretion.").[4]

**AFFIRMED.**

---

[4] Dismissal in this case is appropriate for two additional reasons. First, it accomplishes Rule 37's dual purposes of penalizing bad-faith conduct and deterring others from engaging in it in the future. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam). Even if a lesser sanction might have cured Amerson's conduct, the district court nonetheless was entitled to impose a more severe sanction "to deter those who might be tempted to [engage in similar] conduct in the absence of such a deterrent." *Id.* Second, we've held that "dismissal with prejudice is thought to be more appropriate in a case where"—like this one—"a party, as distinct from counsel, is culpable." *Betty K*, 432 F.3d at 1338.