[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 19, 2003
THOMAS  K. KAHN
CLERK

No. 02-14977
Non-Argument Calendar

D.C. Docket No. 99-03257-CV-WMH

UNITED STATES OF AMERICA

Plaintiff-Appellee,

versus

ROBERTO DURAN SAMANIEGO,

Defendant,

LUIS GONZALEZ BAEZ,

Defendant-Appellant.

Appeal from the United States District Court for the
Southern District of Florida

**(September 19, 2003)**

Before TJOFLAT, BIRCH and CARNES, Circuit Judges:

CARNES, Circuit Judge:

Like the brute Mongo in Mel Brooks's 1974 comedy classic Blazing Saddles, Roberto Duran once knocked out a horse with a single punch.[1] That horse, as well as countless human opponents who suffered the same fate in the streets and back alleys of Panama where Duran grew up, are not included in his career total of 104 officially sanctioned boxing wins – 69 of them by knockout – against only 16 losses.

Born into poverty, Roberto Duran grew up fighting on the streets where he earned the nickname "Manos de Piedra" – Hands of Stone. He started his professional boxing career at the age of 15 or 16. In 1972, when only 21 years

---

[1] As Duran told the story in 1998:

> I was 14 or 15 . . . in my mother's home town of Guarare . . . . There was a fiesta. I had $150 in my pocket, which was a lot of money for me, and we were all drinking whiskey. There was a girl sitting next to me, teasing me, and I felt like a big shot. But I was running out of money to buy alcohol when someone said, "You call yourself Manos de Piedra (Hands of Stone), I betcha a bottle of whiskey and $50 you can't knock out that horse." . . . My uncle, Socrates Garcia was his name, pulled me aside. "I got a secret," he said. He told me to punch the horse behind the ear and "that horse will go down." He did. But I ripped my hand open. You could see right through to the bone. But I didn't feel any pain. I didn't go to the hospital. I stayed with the girl all night and didn't get one kiss.

Michael Katz, Duran is Still Horsing Around, N.Y. Daily News, June 2, 1998, at 75.

old, Duran won the lightweight championship of the world by knocking out Ken Buchanan in the thirteenth round. As a lightweight, he achieved a near perfect record of 62 wins in 63 contests, which explains why Duran is widely regarded as one of the greatest boxers in that weight category in the history of the sport. He held the lightweight title from 1972 to 1979, when he put it down in order to fight as a welterweight.

Duran captured the welterweight championship in 1980 with a fifteen-round decision over Sugar Ray Leonard. Five months later Leonard took that title back from Duran, who conceded the fight in the eighth round by muttering what would become two of the most infamous words in boxing history: "no mas." Like a true champ, however, Duran got up off the mat of that embarrassing defeat to win championships in two more weight classes, defeating Davey Moore in 1983 for the junior middleweight title and then, at age 37, defeating Iran Barkley for the middleweight title in 1989. He was the first boxer to win championships in four different weight classes.

Even hands of stone don't last forever, and no one can out box time. The damage done by the pounding Duran had taken in the ring over the years was exacerbated in 2001 by a car crash in Argentina in which he suffered broken ribs and a punctured lung. In February of 2002, at the age of 50, Duran finally hung up

his gloves after 34 years of professional boxing.[2]   He left the ring with his memories and his championship belts, and it is those belts that are at the center of this case.  Duran claims that his championship belts were stolen from his house in Panama by his brother-in-law, Bolivar Iglesias, in September of 1993.  Ever the fighter, Duran has waged a ten-year battle to regain his belts, which are the physical embodiment of his life's work and a reminder of the glory that once was his.  It is late in the last round of that legal fight, which began when Duran filed a criminal complaint against Iglesias in Panama and convinced the FBI to investigate the disappearance of his belts.

It is undisputed that Duran's championship belts ultimately came into the hands of Luis Gonzalez Baez, a Miami businessman, and that Baez attempted to sell the belts to undercover FBI agents (who had set up a sting operation) for $200,000.   Baez was arrested, but he claimed that the belts had not been stolen. The government confiscated the belts and filed an interpleader action in federal district court to determine whether Duran or Baez is the rightful owner of the belts.  The case was tried to a jury, which returned a verdict in favor of Duran.

---

[2]The facts about Roberto Duran's career are drawn from HickokSports.com, Sports Biographies, at http://www.hickoksports.com/biograph/duranrob.shtml; Ken Jones, One Moment of Weakness Dogs Duran's Awesome Reputation, The Independent (London), July 25, 2002, at P24; and David A. Avila, Duran Among Sport's All-Time Greats, The Press-Enterprise, Feb. 21, 2002, at D08. All the other facts in this opinion are drawn from the record on appeal.

This is Baez's appeal from the judgment the district court entered in accordance with that verdict.

Baez's principal contention on appeal is that the district court should not have admitted testimony about a purported apology from Bolivar Iglesias. Over Baez's objection, the district court permitted a number of witnesses, including Duran and some of his family members, to testify that Iglesias apologized in their presence for stealing the belts. Baez contends that testimony is inadmissible hearsay. The district court allowed it on the theory that the out-of-court statement described an existing state of mind or emotion, and for that reason fit within the hearsay exception set out in Federal Rule of Evidence 803(3). We review the district court's evidentiary ruling only for an abuse of discretion, and we will reverse only if Baez convinces us that an erroneous ruling "resulted in a substantial prejudicial effect." Alexander v. Fulton County, Ga., 207 F.3d 1303, 1326 (11th Cir. 2000) (citation and internal marks omitted).

Rule 803(3) provides that, even though the declarant is not available as a witness, the following is not excluded by the hearsay rule:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless

5

it relates to the execution, revocation, identification, or terms of declarant's will.

Fed. R. Evid. 803(3). The question, as Baez's argument frames it, is whether Iglesias's apology falls within the exclusion from Rule 803(3) admissibility because it is a "statement of memory or belief to prove the fact remembered or believed."

An apology is evidence of a then-existing state of mind or emotion: remorse. Iglesias's apology is admissible to prove the truth of the matter asserted – that Iglesias felt remorse at the time he made the apologetic statement. See T. Harris Young & Assoc., Inc. v. Marquette Elec., Inc., 931 F.2d 816, 827-28 (11th Cir. 1991). That is not the problem. The problem is, as we have observed, that "the state-of-mind exception does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind." United States v. Cohen, 631 F.2d 1223, 1225 (5th Cir. 1980).[3] Consistent with that position, we have explained that the purpose of the exclusion from Rule 803(3) admissibility is "to narrowly limit those admissible statements to declarations of condition – 'I'm scared' – and not belief – 'I'm scared because [someone] threatened me.'" Id.

[3]In Bonner v. City of Prichard, 661 F. 2d 1206 (11th Cir. 1981) we adopted as binding precedent Fifth Circuit decisions issued prior to the close of business on September 30, 1981.

6

The testimony admitted in this case was not limited to the fact that Iglesias had expressed remorse, but also included the fact that he said he apologized for and asked forgiveness for having stolen the belts. The testimony most often came in response to questions from Duran's counsel about how the witness knew Iglesias had stolen the belts. What Iglesias said was offered to show not only that he was remorseful, but also that he had stolen the belts. Rule 803(3) expressly prohibits the use of a statement of then-existing state of mind in this way. That prohibition, the committee notes explains, is necessary "to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind." Fed. R. Evid. 803(3) advisory committee's note.

Our conclusion that Iglesias's apology was not properly admitted under Rule 803(3) does not end the matter. Although the district court admitted the statement under Rule 803(3), Duran offered the testimony concerning the apology as a statement against interest by a declarant unavailable at trial, which is admissible under Rule 804(b)(3). The district court did not reach that alternative ground for admissibility, but we do because we will not hold that the district court abused its discretion where it reached the correct result even if it did so for the

7

wrong reason. Close v. United States, 336 F.3d 1283, 1285 n.1 (11th Cir. 2003) ("'[W]e may not reverse a judgment of the district court if it can be affirmed on any ground, regardless of whether those grounds were used by the district court.'") (quoting Magluta v. Samples, 162 F.3d 662, 664 (11th Cir. 1998)). The part of Iglesias's apology in which he admitted having stolen Duran's belts is a statement against interest, because it would "subject the declarant to civil or criminal liability" within the meaning of Rule 804(b)(3). For a statement against interest to be admissible under Rule 804, however, the declarant must have been unavailable at the time of the trial within the meaning of Rule 804(a).

Iglesias was not present at the trial, but that does not mean he was unavailable for Rule 804 purposes. Subsection (a) of that rule tells us a witness should be considered unavailable in five separate circumstances, only one of which is relevant in this case: The declarant is unavailable if he "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means." Fed. R. Evid. 804(a)(5).

Duran could not procure Iglesias's attendance or testimony by process because Iglesias, a citizen of Panama, apparently was living in that country at the

time of the trial, and "foreign nationals located outside the United States . . . are beyond the subpoena power of the district court." United States v. Drogoul, 1 F.3d 1546, 1553 (11th Cir. 1993). Duran did enlist the help of Iglesias's immediate family in an attempt to locate him and persuade him to return to the United States and testify. Iglesias's sister, who is Duran's wife, testified that she and her mother had tried to locate Iglesias on five different occasions, but finding him had proven impossible. Iglesias's mother testified that she had tried to contact him in order to get him to come back and testify but was unable to get Iglesias.

Using the efforts of Iglesias's sister and mother, as Duran did, is a reasonable means of attempting to locate Iglesias in Panama and persuade him to travel to the United States to testify. It follows that Duran did establish Iglesias was unavailable to testify under Rule 804(a)(5), so the out-of-court statement Iglesias made was admissible under Rule 804(b)(3) as a statement against interest. The district court did not abuse its discretion in admitting the statement, albeit on the wrong ground.

Baez also contends that the district court should not have denied his motion for Federal Rule of Civil Procedure 16(f) sanctions against Duran for violating, on two occasions, the court's order that Duran provide both a witness and exhibit list to Baez. Baez argues that his ability to prepare for trial was

9

compromised by Duran's total disregard of the court's order, and the appropriate sanction should have been dismissal of Duran from the action, striking some of his pleadings, or excluding some witness testimony. He does not specify which pleading or testimony.

We review a district court's refusal to impose sanctions under Rule 16(f) only for abuse of discretion. See Brooks v. United States, 837 F.2d 958, 961 (11th Cir. 1988); Acuna v. Brown & Root, Inc., 200 F.3d 335, 340 (5th Cir. 2000). Rule 16(f) provides for sanctions as follows:

> If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f).

Rule 16(f) sanctions were "designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation." Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir. 1985). And district courts have discretion to decide if there is a pattern of delay or a deliberate refusal to comply with court orders or directions that justifies a sanction.

We do not believe the district court abused its discretion in denying Baez's motion for sanctions against Duran for filing his pretrial statement three days after it was due. The court acted well within its discretion in concluding that three days was not an "unreasonable delay" and did not interfere with the expeditious resolution of the case. Whether the court properly could have ruled the other way is a question we need not decide. See In re Rasbury, 24 F.3d 159, 168 (11th Cir. 1994) (noting that under abuse of discretion standard there are some questions on which the district court might rule either way and be affirmed, as long as the decision is within the "range of choice for the district court").

The judgment entered on the jury's verdict stands, and under it Roberto Duran is entitled to regain his championship belts.

**AFFIRMED**.

11