[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 28, 2006
THOMAS K. KAHN
CLERK

No. 05-12091
Non-Argument Calendar

_____

D. C. Docket No. 03-00427-CR-5-SLB-HGD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH CARLIS CARLISLE,
a.k.a. Joseph Carlis Carlile,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 28, 2006)

Before DUBINA, CARNES and HULL, Circuit Judges.

PER CURIAM:

Joseph Carlis Carlisle appeals his conviction for the possession of a firearm

by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  We affirm.

Carlisle raises four separate issues.  He contends that the district court erred by:  (1) denying his motion to dismiss the indictment because the government failed to allege appropriate federal subject matter jurisdiction under 18 U.S.C. § 922(g)(1); (2) excluding the defense of voluntary intoxication and in refusing his proposed jury charge on that defense; (3) admitting the hearsay testimony of two witnesses who said that Carlisle's wife identified Carlisle as the person who shot her; and (4) admitting the testimony of Carlisle's wife regarding his prior possession of a firearm.

## I.

On the night of April 16, 2002, Carlisle called 911 and told the operator that his wife, Joyce Carlisle, had been shot.  An off-duty paramedic, Robert Carson, responded to the call because he lived nearby, and he arrived a few minutes after the 911 call was received.  Carlisle was outside the house and told Carson that he had shot his wife.  Carson went in the house and began treating Ms. Carlisle's gunshot wound.  He saw a handgun lying on the floor near where she was sitting.

About twenty minutes after the 911 was placed, John Jordan, an on-duty employee of the same ambulance service, arrived on the scene.  He put Ms. Carlisle on a stretcher and took her to the ambulance.  She told him that her

2

husband had shot her. Deputy Kenneth Miller arrived at the scene while Ms. Carlisle was still receiving medical attention in the house. He heard Carlisle mumbling that it was an accident and that he did not mean to do it. Miller observed that Carlisle appeared to be intoxicated. Miller also saw a nine millimeter pistol on the floor and noted that it was still in firing position.

After Ms. Carlisle was taken to the ambulance, she told Miller that her husband had gone to the bedroom, gotten the pistol, and returned to the living room where he shot her. Two days later, Investigator Doyle York took a statement from Ms. Carlisle at the hospital where she was being treated for her gunshot wound. In that statement she said that Carlisle went to the bedroom, got the gun, then returned to the living room. They were not arguing but were "talking normal," and he said that he was going to ask her a question and "if [she] didn't answer it right, [he] might just do something crazy or play crazy." Trial Tr. vol. 3, 148 (Jan. 6, 2004). She said that before he asked any question, he shot her. She also told York that Carlisle sometimes would shoot the gun with friends or alone. Subsequent testimony that Ms. Carlisle gave at trial, however, contradicted the statement she gave to York.

## II.

We review constitutional challenges to statutes de novo. United States v.

3

_Dupree_, 258 F.3d 1258, 1259 (11th Cir. 2001). We review a district court's denial of a motion to dismiss an indictment for abuse of discretion, but the sufficiency of an indictment is a question of law that we review _de novo_. _United States v. Bobo_, 344 F.3d 1076, 1082–83 (11th Cir. 2003). We review a district court's evidentiary rulings for abuse of discretion. _United States v. Henderson_, 409 F.3d 1293, 1297 (11th Cir. 2005).

Carlisle contends that the district court should have granted his motion to dismiss the indictment because the government did not allege appropriate subject matter jurisdiction under 18 U.S.C. § 922(g)(1). That statute makes it "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce . . . any firearm or ammunition." 18 U.S.C. § 922(g)(1). Carlisle's indictment recited his prior felony convictions, stating that each was "a crime punishable by a term of imprisonment exceeding one year" and that he "did knowingly possess in and affecting commerce a firearm, that is, a Taurus 9mm pistol, in violation of Title 18, United States Code, Section 922(g)(1)."

Carlisle contends that in light of _United States v. Lopez_, 514 U.S. 549, 115 S. Ct. 1624 (1995), _United States v. Morrison_, 529 U.S. 598, 120 S. Ct. 1740 (2000), and _United States v. Jones_, 549 U.S. 848, 120 S. Ct. 1904 (2000), the felon

4

in possession component of 18 U.S. C. § 922(g) does not have a sufficient nexus to interstate commerce and therefore exceeds Congress' power under the Commerce Clause. Carlisle recognizes that in United States v. McAllister, 77 F.3d 387, 390 (11th Cir. 1996), we held that 18 U.S.C. § 922(g)(1) contains a jurisdictional element and is therefore a valid exercise of Congress' Commerce Clause power. He also acknowledges that we reaffirmed McAllister's holding in light of subsequent Supreme Court decisions. See, e.g., United States v. Scott, 263 F.3d 1270, 1273, 1274 (11th Cir. 2001) (observing that "nothing in Morrison or Jones alters the reasoning upon which McCallister is moored" and reaffirming the holding that "as long as the weapon in question has a 'minimal nexus' to interstate commerce, § 922(g) is constitutional"). He argues that those cases are factually distinguishable from his because he did not purchase the gun involved in his § 922(g) offense, and he had nothing to do with that gun's involvement in interstate commerce.

"To establish a violation of § 922(g)(1), the government must prove (1) that the defendant was a convicted felon, (2) that the defendant was in knowing possession of a firearm, and (3) that the firearm was in or affecting interstate commerce." United States v. Shelley, 405 F.3d 1195, 1204 (11th Cir. 2005) (quotation marks and alteration omitted). As long as the weapon in question has a

5

"minimal nexus" to interstate commerce, a charge under § 922(g)(1) is constitutional. Scott, 263 F.3d at 1274 (citation omitted). The government only has to demonstrate that the possessed firearm traveled in interstate commerce in order to establish that minimal nexus to interstate commerce. Id.

The government showed that the firearm possessed by Carlisle traveled in interstate commerce. An ATF agent testified that the firearm was manufactured in Brazil, imported to Miami, and shipped to a wholesaler in Mississippi. It continued to meander through the stream of commerce and ended up at a pawnshop in Scottsboro, Alabama, where Ms. Carlisle purchased it. The government did not have to show that Carlisle personally purchased the gun in order to show the gun's connection to interstate commerce. See Scott, 263 F.3d at 1274.

Carlisle also argues that because his indictment alleged that his actions affected "commerce" and not "interstate commerce," it did not contain every element of the charged offense and should have been dismissed. "For an indictment to be valid, it must contain the elements of the offense intended to be charged and sufficiently apprise the defendant of what he must be prepared to meet." Bobo, 344 F.3d at 1083 (quotation marks, alterations, and citation omitted). If an indictment tracks the language of the statute, it must include enough of the

6

facts and circumstances to inform the defendant of the specific offense with which he is charged.  Id.

We reject Carlisle's argument that the absence of the adjective "interstate" before the noun "commerce" in his indictment makes that indictment fatally defective.  The indictment tracked the language of § 922(g) and clearly informed Carlisle of the specific offense with which he was charged.  See Bobo, 344 F.3d at 1083.  To suggest otherwise stretches the limits of interpretation and imagination.

Accordingly, the district court did not err in denying Carlisle's motion to dismiss the indictment.

## III.

Carlisle contends that the district court should not have excluded the defense of voluntary intoxication.  He does not, however, cite any authority to support his contention that we should reverse the district court on that point; he just argues that it was wrong.  See Brief for Appellant at 19–20.

The district court permitted Carlisle to mention the fact of intoxication but would not allow him to argue that it negated the knowledge element of § 922(g).  The court also instructed the jury that voluntary intoxication is not a defense to a felon in possession charge under § 922(g).   Therefore, Carlisle seems to object primarily to the court's refusal to let the jury consider that defense.

We review a district court's refusal to give a proposed jury instruction only for abuse of discretion. United States v. Puche, 350 F.3d 1137, 1150 (11th Cir. 2003). "A district court's refusal to give the requested instruction is reversible error only if (1) the instruction is substantially correct, (2) the instruction was not addressed in the charge actually given, and (3) the failure to give the requested instruction seriously impaired the defendant's ability to present an effective defense." Id. We will not reverse a conviction based on a jury charge "unless the issues of law were presented inaccurately, or the charge improperly guided the jury in a substantial way as to violate due process." United States v. Anderson, 326 F.3d 1319, 1330–31 (11th Cir. 2003) (quotation marks omitted). "In deciding whether a defendant's requested instruction was substantially covered by the actual charge delivered to the jury, we need only ascertain whether the charge, when viewed as a whole, fairly and correctly states the issues and the law." United States v. Klopf, 423 F.3d 1228, 1241 (11th Cir. 2005) (quotation marks omitted).

We have held that a violation of 18 U.S.C. § 922(g) is a strict liability offense. United States v. Deleveaux, 205 F.3d 1292, 1298 (11th Cir. 2000) ("The prosecution need show only that the defendant consciously possessed what he knew to be a firearm."). The crime of being a felon in possession of a firearm does not require any specific intent. Id. "Voluntary intoxication cannot negate a

8

general intent crime" or a crime where no specific intent is required. <u>United States v. Costello</u>, 760 F.2d 1123, 1128 (11th Cir. 1985).

As the Seventh Circuit has observed, under rare circumstances it might be possible to raise an intoxication defense to a § 922(g) charge. <u>United States v. Reed</u>, 991 F.2d 399, 401 (7th Cir. 1993) (considering the possibility that "if the defendant were comatose and the evidence indicated someone dropped the gun in his lap" he might have a valid intoxication defense to § 922(g)(1)). Those rare circumstances do not apply here. Carlisle walked into the bedroom, picked up the gun, and carried it into the living room where his wife was sitting. The gun was not dropped on him while he was comatose.

The defense of voluntary intoxication was unavailable to Carlisle. Accordingly, the district court did not err in excluding that defense and in denying Carlisle's proposed jury charge.

**IV.**

Carlisle contends that the district court should not have admitted the statements of two witnesses who testified that Ms. Carlisle told them that her husband shot her. Carlisle argues that those statements were inadmissible hearsay. One of the witnesses was John Jordan, a paramedic who came to the Carlisle residence and treated Ms. Carlisle for a gunshot wound after Mr. Carlisle called

9

911 and told them his wife had been shot.  The other witness was Kenneth Miller, a deputy sheriff who arrived at the scene soon after the shooting had occurred.

"We review evidentiary rulings for an abuse of discretion."  United States v. Thomas, 242 F.3d 1028, 1031 (11th Cir. 2001).  "[W]hen employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard."  United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc), cert. denied, 125 S. Ct. 2516 (2005).  We will reverse only if "an erroneous ruling resulted in a substantial prejudicial effect."  United States v. Samaniego, 345 F.3d 1280, 1282 (11th Cir. 2003) (quotation marks omitted).

In general, hearsay is inadmissible, but there are a number of exceptions.  Fed. R. Evid. 802.  One is the excited utterance exception, which allows into evidence a  "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  Fed. R. Evid. 803(2).  As Rule 803(2) indicates, for hearsay to be admissible as an excited utterance, the out-of-court statement must be related to the startling event and must be made while under the stress or excitement caused by the event.  See id.  An "out-of-court statement made at least fifteen minutes after the event it describes is not admissible [as a hearsay exception] unless the declarant was still in

10

a state of excitement resulting from the event." United States v. Cain, 587 F.2d 678, 681 (5th Cir. 1979).

Ms. Carlisle told Jordan and Miller that her husband had shot her shortly after the shooting occurred. It stands to reason that being shot by one's spouse would create significant distress that might linger longer than just a few minutes. It is reasonable to conclude that when Ms. Carlisle was talking to Jordan and Miller while being treated for a gunshot wound, she remained in a state of distress caused by the shooting, and her statements about who had shot her were related to that event. Her statements to Jordan and Miller, therefore, fit into the excited utterance exception. Accordingly, the district court did not err when it admitted the testimony of those two witnesses as exceptions to the hearsay exclusion rule.

## V.

Finally, Carlisle contends that it was a violation of Fed. R. Evid. 404(b) for the district court to have admitted Ms. Carlisle's testimony that Carlisle had previously possessed a firearm. That is another evidentiary ruling, which we review only for abuse of discretion. Thomas, 242 F.3d at 1031. "We review preserved evidentiary objections for harmless error." United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005). At trial Carlisle objected solely on the basis of Fed. R. Evid. 404(b), and that is also the only ground that he argues on appeal.

11

Ms. Carlisle testified at trial that the gun in question belonged to her and that she kept it under lock and key except for the times when she went somewhere without her husband or when he was away from home. She testified that just before she was shot, Carlisle came out to the living room carrying the gun by its barrel, set it on the coffee table, and slapped it away from him, and that is when the gun went off, and she was shot. Her testimony that she kept the gun under lock and key almost all the time contradicted a previous signed statement she had given to Investigator York, in which she had stated that Carlisle would sometimes shoot the gun with friends or by himself. Ms. Carlisle testified that just before she was shot, her husband "was trying to ask [her] a question." Trial Tr. vol. 3, 140 (Jan. 6, 2004). She explained: "And it was something about the gun. And I'm sure it was because the gun was out, why I didn't have it locked up, but I didn't know he was coming home that night." Id. On cross-examination, Ms. Carlisle explained the inconsistency by saying that she had been "badgered to make a statement." Id. at 147–48. On redirect examination, she said that she had "just blurted out some stuff, and [she] shouldn't have because stuff on that statement is not true." Id. at 150.

The district court found that this evidence of Carlisle's prior possession of the gun was admissible because it showed intent to possess the gun. The court

12

reasoned that Ms. Carlisle's testimony about Carlisle holding the gun by the barrel and slapping it away from him implied that he had the gun in his possession only because he was going to ask her about why it was not locked up. Therefore, the court admitted the statement to show that Carlisle may have intended to possess the gun if he had possessed it on other occasions. Because Carlisle objected to the admission of that evidence only on the basis of Fed. R. Evid. 404(b), we review the court's decision solely to determine if it violated that provision.

As a general rule, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Such extrinsic evidence "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Id. We have held that Fed. R. Evid. 404(b) is a rule of inclusion. United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003).

"This circuit's test for admissibility of 404(b) evidence was announced in United States v. Beechum, 582 F.2d 898 (5th Cir. 1978) (en banc), and later elaborated upon in United States v. Miller, 959 F.2d 1535 (11th Cir. 1992) (en banc)." United States v. Matthews, 431 F.3d 1296, 1310 (11th Cir. 2005). The Beechum and Miller holdings set up a three-part test for determining whether

13

evidence is admissible under Rule 404(b):

> First, the evidence must be relevant to an issue other than the defendant's character; Second, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; Third, the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

Id. at 1310–11.

According to Fed. R. Evid. 403, a district court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. In reviewing a decision based on Rule 403, we consider the evidence "in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." Jernigan, 341 F.3d at 1284. A district court's limiting instruction can reduce the risk of undue prejudice. United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005). "So long as the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instructions." Puche, 350 F.3d at 1148 (quotation marks omitted).

Here the evidence was relevant to an issue other than Carlisle's character; it showed that Carlisle had the requisite state of mind to be convicted of violating §

14

922(g).  Also, the court gave a limiting instruction on that evidence, explaining that it was only to be considered to determine if Carlisle had the requisite state of mind to commit the offense charged in the indictment.  The court instructed the jury as follows:

> During the course of the trial, there was testimony that the defendant's wife stated that the defendant has possession of a gun on occasions other than the occasion charged in the indictment.
>
> You must not consider this evidence in deciding if the defendant committed the act charged in the indictment. However, you may consider this evidence for other very limited purposes.
>
> If you find beyond a reasonable doubt, from other evidence in the case, that the defendant did commit the act charged in the indictment, then you may consider evidence of any similar act allegedly committed on other occasions to determine whether the defendant had the state of mind necessary to commit the crime charged in the indictment or whether the defendant committed the act, for which the defendant is on trial, by accident or mistake.

Trial Tr. vol. 3, 209–10 (Jan. 6, 2004).

The district court did not abuse its discretion when, over Carlisle's Fed. R. Evid. 404(b) objection, it admitted Carlisle's wife's testimony regarding his prior possession of a firearm.  The evidence was admissible to show his intent.  See Jernigan, 341 F.3d at 1281 ("[T]he caselaw in this and other circuits establishes

15

clearly the logical connection between a convicted felon's knowing possession of a firearm at one time and his knowledge that a firearm is present at a subsequent time (or, to put it differently, that his possession at the subsequent time is not mistaken or accidental)"); see also Ramirez, 426 F.3d at 1354 ("A similarity between the other act and the charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense."). Any risk of undue prejudice Ms. Carlisle's testimony may have created was reduced by the court's limiting jury instruction. See Ramirez, 426 F.3d at 1354.

Although Carlisle contends that several errors that would be harmless by themselves added up to a violation of his right to a fair trial, see United States v. Preciado-Cordobas, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993), we have concluded that the district court did not err. Accordingly, we affirm Carlisle's conviction.

**AFFIRMED.**