[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11493
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 17, 2010
JOHN LEY
CLERK

D.C. Docket No. 8:06-cv-01973-TGW

BADER AL-BABTAIN,

      Plaintiff - Counter Defendant - Appellee,

ABDULMOHSEN AL-BABTAIN

      Plaintiff - Appellee,

versus

HANI S. BANOUB

      Defendant - Counter Claimant - Appellant,

U.S. ENERGY ALLIED, LLC, et al.,

      Counter - Defendants,

M/S. BADER BARRAK AL BABTAIN & BROS. GEN. TRAD. & CONT. CO.,
a.k.a. M/S. Bader Al Babtain General Trading Co.
ENERGY ALLIED CO.,

      Counter Defendants - Appellees.

———————————————————

Appeal from the United States District Court
for the Middle District of Florida

———————————————————

(November 17, 2010)

Before CARNES, BARKETT, and HULL, Circuit Judges.

PER CURIAM:

This case arises from a business relationship between Hani Banoub, who is a resident of Florida, and two brothers who are both Kuwaiti nationals, Abdulmohsen Al-Babtain and Bader Al-Babtain. Beginning in the 1980s, Banoub engaged in a number of business ventures with the Al-Babtains, but in 2005 the relationship soured. That spring the Al-Babtains asked Banoub to buy a yacht for them in the United States and ship it to Kuwait. For that purpose they sent him $900,000, but Banoub never bought the yacht and never returned the money.

The Al-Babtains brought an action in district court seeking to recover their $900,000 and Banoub counterclaimed against the Al-Babtains and several of their companies, contending that the Al-Babtains and those companies actually owed him money. After the district court dismissed some of Banoub's counterclaims, both sides agreed to have the remaining claims transferred to a magistrate judge. The case proceeded to a three-day bench trial, and the judge issued his findings of

fact and conclusions of law on March 5, 2010. In addition to dismissing the remaining counts of Banoub's counterclaim, he entered a judgment in favor of the Al-Babtains for over $1.2 million, which included both the $900,000 they had transferred to Banoub for the yacht and over $300,000 in prejudgment interest. Banoub contends that the magistrate judge committed clear error in his findings of fact and abused his discretion in an evidentiary ruling on attorney-client privilege.

## I.

We review a district court's findings of fact for clear error. Under this highly deferential standard, "we must affirm the district court unless our review of the entire record leaves us 'with the definite and firm conviction that a mistake has been committed.'" United States v. Engelhard Corp., 126 F.3d 1302, 1305 (11th Cir. 1997) (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573, 105 S.Ct. 1504, 1511 (1985)). Findings of fact that are based on the district court's determination as to the credibility of witnesses "demand[] even greater deference." Anderson, 470 U.S. at 575, 105 S.Ct. at 1512. As the Supreme Court has explained, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding,

3

if not internally inconsistent, can virtually never be clear error." Id.

Seeking to establish an internal inconsistency in the evidence the magistrate judge credited, Banoub points to a clause in his employment contract with Energy Allied, one of the Al-Babtains' companies. That clause states: "This Agreement contains the entire agreement of the parties and there are no other promises or conditions considered. Amendments to this agreement must be made in writing and signed by both parties." The district court addressed that clause before the magistrate judge did, and Banoub suggests that the magistrate judge's later analysis was inconsistent with the district court's earlier one.

Before the case was transferred to the magistrate judge, the Al-Babtains and their companies had moved to dismiss Banoub's counterclaim under Fed. R. Civ. P. 12(b)(6). In ruling on the motion, the district court examined the employment agreement with Energy Allied, which was signed on January 2, 2004.[1] That contract guaranteed Banoub an annual salary of $72,000 plus a quarterly bonus of 5% of Energy Allied's total gross revenues. Banoub's counterclaim, however, alleged the existence of an earlier oral contract with Bader Al-Babtain in addition

---

[1]The district court was considering the employment agreement on a motion to dismiss because it was attached to Banoub's amended counterclaim as an exhibit. That agreement was signed by Bader Al-Babtain as Chairman of the Board of Energy Allied, one of the counter-defendants. In its answer to the counterclaim, Energy Allied admitted the validity of the employment agreement.

4

to the <u>written</u> contract with Energy Allied.  According to Banoub, that oral contract guaranteed him an additional 10% of the company's gross revenues. Banoub made that allegation despite the fact that he himself had drafted the written contract with Energy Allied and despite the "entire agreement" clause that it contained.

In analyzing the "entire agreement" clause for purposes of the Rule 12(b)(6) motion, the district court concluded that the clause clearly served to terminate "obligations under the oral agreement that <u>may</u> have existed." (emphasis added). But the clause did not "merge all previous obligations under the [alleged] oral agreement into the Employment agreement."  Thus, the court reasoned, Banoub's contract with Energy Allied "[did] not contain a merger clause."  The court accordingly dismissed Banoub's counterclaims to the extent they sought damages based on the existence of an oral contract <u>after</u> January 2, 2004, the date Banoub signed the employment agreement; but claims based on services he supposedly provided to Energy Allied <u>before</u> January 2, 2004, survived the Rule 12(b)(6) motion and were among the claims considered by the magistrate judge during the bench trial.

Both Banoub and the Al-Babtains testified at trial about the Energy Allied contract and its "entire agreement clause."  The magistrate judge's determinations

5

on these points reads:

> Banoub drafted the Energy Allied (Kuwait) employment agreement himself and was present in Kuwait when the agreement was executed. Banoub testified that he was entitled not only to 5% of gross revenues of Energy Allied (Kuwait) as provided in the written agreement, but also to an additional 10% of gross revenues pursuant to the prior oral agreement with Bader Al-Babtain. This testimony, which I reject, struck me as patently implausible, particularly in light of the merger provision and the fact that the agreement was drafted by Banoub. This is simply one example why I find Banoub not to be a credible witness.

(record citations omitted). Banoub seizes upon the language of the magistrate judge's findings to suggest that the findings of fact include an "internal inconsistency": the magistrate judge assumed that there was a merger clause in Banoub's contract with Energy Allied even after the district court in its ruling on the 12(b)(6) motion had determined that there was not one. That "internal inconsistency," Banoub argues, led the magistrate judge to discredit from then on everything he said and amounts to a clear error warranting reversal.

Banoub's argument misses the boat. First, the magistrate judge's findings of fact were not premised on whether Banoub's contract contained a legally binding merger provision. Instead, the judge was merely pointing to the fact that Banoub failed to offer a reasonable explanation for why he would draft a contract that entitled him to only 5% of gross revenues if he were actually entitled to 15%.

6

The judge clearly found Banoub's testimony on that subject implausible regardless of the legal effect of the merger provision. Second, in ruling on the 12(b)(6) motion, the district court was determining only whether Banoub's counterclaims survived as a matter of law, and the court was obliged at that stage to "accept the allegations of the complaint as true and . . . construe the facts alleged in the light most favorable to the plaintiff." Hunnings v. Texaco, Inc., 29 F.3d 1480, 1484 (11th Cir. 1994). Even if we accept for the sake of the argument that the magistrate judge's findings of fact assume the merger provision was legally binding, that assumption would not be inconsistent with the district court's earlier ruling that, for purposes of deciding the 12(b)(6) motion, the contract did not contain a merger clause that would, on its face, preclude Banoub's counterclaims as a matter of law. Third, as the magistrate judge himself noted, Banoub's testimony in regard to the employment contract with Energy Allied was "simply one example" of why he found Banoub not to be a credible witness. The judge consistently rejected Banoub's testimony as "vague, evasive, and inconsistent," choosing instead to credit the testimony of the Al-Babtains, their supporting witness, and the documentary evidence they offered. The findings of fact contain no internal inconsistency establishing clear error.

III.

7

Banoub also contends that certain evidentiary rulings violated the protections of the attorney-client privilege. Specifically, the magistrate judge allowed Banoub to be cross-examined concerning a demand letter that Leah Zammit, Banoub's ex-wife and an attorney, sent to Bader Al-Babtain in October 2005. Banoub's lawyer entered the demand letter into evidence during his cross-examination of Abdulmohsen Al-Babtain, and Banoub testified about the letter in his own direct examination. Counsel raised the privilege objection only during Banoub's cross-examination, when the Al-Babtains' lawyer began to question Banoub about the conversation that led up to Zammit's drafting of the letter.

During his direct examination, Banoub had testified that Bader Al-Babtain had told him simply to "keep" the $900,000 that was transferred for the yacht "as an offset" until the parties could complete an "accounting" of what was owed. On cross, the Al-Babtains' lawyer sought to elicit when, if ever, Banoub had told Zammit about that supposed arrangement, and that if he had done so, why the arrangement was not mentioned in the demand letter that Zammit had sent. When Banoub's lawyer raised the privilege objection, the court overruled, noting, "[S]ince this letter is in evidence, it's no longer attorney/client privilege with respect to this stuff. . . . You cannot have – have it both ways. You've relied upon this document. You've talked about it. The privilege as far as this document is

8

concerned is waived."

We review the district court's evidentiary ruling only for an abuse of discretion, and we will reverse only if "convince[d] . . . that an erroneous ruling 'resulted in a substantial prejudicial effect.'" United States v. Samaniego, 345 F.3d 1280, 1282 (11th Cir. 2003) (quoting Alexander v. Fulton County, Ga., 207 F.3d 1303, 1326 (11th Cir.2000)).

First, we are not persuaded that attorney-client privilege necessarily should have shielded Banoub from the cross-examination that the magistrate judge allowed. Before he raised the privilege objection, Banoub's own counsel had introduced the letter into evidence during his cross of Abdulmohsen Al-Babtain, and Banoub himself had testified about it on direct. The questions Banoub objected to during his cross-examination were limited in scope, focusing mainly on why the letter failed to mention the alleged $900,000 "offset" if indeed he had informed Zammit about that. The magistrate judge did not abuse his discretion in permitting that limited cross-examination into the conversation that preceded the letter's drafting.

Second, even if the judge's determination in regard to the privilege was in error, Banoub has failed to show substantial prejudice. At most the objected-to questioning served only to further undermine Banoub's credibility as a witness.

9

The magistrate judge rejected on numerous grounds Banoub's testimony regarding his dealings with the Al-Babtains and their companies. Laying aside the inquiries about the demand letter, the record still provides compelling support for the magistrate judge's credibility determination.

**AFFIRMED.**