[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10368
Non-Argument Calendar
_____

D.C. Docket Nos. 3:12-cv-00288-MCR-CJK,
5:13-cv-00046-RH-EMT

3:12-cv-00288


EARLE YAFFA,
Executor of the will of Joseph Flom,
RONALD J. WEISS,
Executor of the will of Joseph Flom,
JASON FLOM,
ELIZABETH YATES,

Plaintiffs-Counter Defendants-
Cross Defendants-Appellees,

versus

DEANNA L. WEIDNER,

Interested Party-Appellant,

HERBERT L. GRAHAM,

Intervenor Plaintiff-Counter Defendant,

SUNSOUTH BANK,

Defendant-Intervenor Defendant-Counter Claimant,

RONALD E. GILLEY, et al.,

Defendants-Cross Defendants-Counter Defendants,

ALABAMA STATE BANKING DEPARTMENT,

Intervenor.

_____

5:13-cv-00046

SUNSOUTH BANK,

Plaintiff-Counter Defendant,

versus

NASHYORK LLC, et al.,

Defendants-Counter Claimants.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(November 21, 2017)

Before HULL, MARTIN and JILL PRYOR, Circuit Judges.

PER CURIAM:

Deanna L. Weidner, an attorney representing the defendant and counter-claimant SunSouth Bank ("SunSouth") in this action, appeals from a sanctions order that imposed a "fine" of $5,000 on Weidner personally.  Weidner asserts that the sanctions were entered without adequate notice or a sufficient factual basis, were an abuse of the district court's discretion, and thus violated due process. After review, we affirm.

## I.    BACKGROUND

### A.    The Underlying Litigation

In this action, the plaintiffs, who were investors in real estate, sought rescission of their various loan guaranties and assignment agreements (collectively, the "Agreements") with the defendant, SunSouth.  The plaintiffs alleged, in sum, that the Agreements were fraudulently induced as part of a scheme by SunSouth and other defendants to defraud investors in real estate developments in Florida. Against the several defendants, the plaintiffs asserted claims under Florida and federal law, including claims for fraud and for violations of the Racketeer Influenced Corrupt Organization ("RICO") statute, 18 U.S.C. § 1961, et seq. Defendant SunSouth asserted counterclaims, alleging that the Agreements were valid and that the plaintiffs were liable thereunder.[1]

---

[1] In a separate action, SunSouth sought to enforce a promissory note against a debtor, NashYork, LLC ("NashYork"), and four guarantors.  The plaintiffs in the instant action were members of NashYork, and some of their allegations concerned the defendants' relationship with

3

After a three-week trial in February and March of 2016, the jury returned a verdict in favor of the plaintiffs on some of their claims, including the fraud and RICO claims. On March 21, 2016, the district court entered an order "declar[ing] the instruments void and rescinded for purposes of the fraud claims and grant[ing] equitable injunctive relief precluding enforcement of the instruments for purposes of the RICO claims." That same day, the district court entered a declaratory judgment rescinding the Agreements and enjoining defendant SunSouth from enforcing them.[2]

Defendant SunSouth appealed. However, that appeal was voluntarily dismissed in May 2017, after the parties settled the RICO claims. This Court directed the district court, on remand, to vacate only the RICO portions of its original judgment, and to enter an amended judgment to reflect the parties' settlement of the RICO claims. On June 15, 2017, the district court entered an order and amended judgment, which set forth that the plaintiffs took nothing on the RICO claims. In all other respects, the district court's original judgment of March 21, 2016 remained in effect. Accordingly, the plaintiffs prevailed in the action, and the Agreements remained voided and rescinded for purposes of the fraud claims.

---

NashYork. Due to the substantial overlap between them, the two cases were consolidated for discovery and trial in the Northern District of Florida. NashYork is not involved in this appeal.

[2]The district court also entered judgment in favor of NashYork on all of SunSouth's claims in the consolidated case.

**B.      The Sanctions Order**

While the merits appeal was pending, post-judgment litigation on collateral matters continued in the district court.  This appeal involves only the district court's October 31, 2016 order imposing sanctions against SunSouth and its attorney, Weidner.  In that order, the district court <u>sua sponte</u> imposed a "fine" of $5,000 on counsel Weidner personally, pursuant to Federal Rule of Civil Procedure 16(f)(1)(C) "and the court's inherent power to manage its cases and sanction bad faith conduct."[3]  The fine was imposed for Weidner's "pattern of delay, noncompliance, and total disregard of the court's pretrial orders and deadlines." The district court's 17-page order detailed the pattern of missed deadlines, warnings, and failures to comply that led to the fine.  We thus first review the specific conduct and warnings leading to the order.

1.      The Conduct and Warnings Leading to the Sanctions Order

Throughout the district court proceedings, Weidner was lead or co-lead counsel for defendant SunSouth, together with co-counsel David B. Anderson.  In July 2015, the district court entered two orders setting the pretrial and trial schedule.  The district court set trial to commence on February 22, 2016, with a pretrial conference scheduled for February 12, 2016.  No later than December 30,

---

[3]The district court also imposed sanctions separately on SunSouth.  As noted below, SunSouth has not appealed from the order.

5

2015, counsel for both parties were to meet and confer, for the purpose of preparing a pretrial stipulation and related papers. Those submissions were to be filed by January 29, 2016, a deadline later extended to February 10. The pretrial stipulation was to be signed by counsel for all parties, and was to contain, among other things, a list of all exhibits and witnesses to be offered at trial, together with any objections thereto.

Neither party filed a pretrial stipulation or any related paper by the February 10 deadline. However, a few hours after midnight in the early morning February 11, the plaintiffs filed their pre-trial stipulation, without the signature of defendant SunSouth's attorneys and without any witness or exhibit list from SunSouth. In a footnote, the plaintiffs indicated that, "Based on delays in receiving a final exhibit list from Defendant, Plaintiffs have not yet been able to determine their potential objections to the exhibits identified by Defendant."

Later on February 11, the district court issued an order for defendant SunSouth to show cause, at the pretrial conference the next day, why it should not be sanctioned for failing to comply with the scheduling orders.

The pretrial conference took place on February 12. Weidner and Anderson appeared on behalf of defendant SunSouth. The minutes of the conference reflect that the district court heard approximately 17 minutes of argument on the show cause order, did not impose sanctions, and directed SunSouth to file its pretrial

6

stipulation by midnight that night.  Although no transcript is available, the district court explained in its later sanctions order that it "reluctantly" declined to enter sanctions at the pretrial conference, after finding both parties at fault for the breakdown of the pretrial stipulation process.  The district court "sternly warned [the parties] on the record that the court's rules and orders would be enforced by the imposition of sanctions from that date forward."  Among other things, the district court informed the parties that "shenanigans will be dealt with harshly by me."

Just after midnight that night, defense counsel Weidner filed two documents: (1) a document listing defendant SunSouth's objections to the deposition of one of the plaintiffs' experts; and (2) a document that purported to be objections to the plaintiffs' exhibits, but was in fact just a copy of the plaintiffs' exhibit list. Weidner provided no other part of SunSouth's required pretrial submissions.

On February 15, the plaintiffs filed a motion for clarification, asking the district court to address the effect of SunSouth's omissions.  In their motion, the plaintiffs indicated that defense counsel Weidner had emailed to them SunSouth's objections to the plaintiffs' exhibit list, in the early afternoon of Saturday, February 13.  The plaintiffs attached these objections as an exhibit to their motion for clarification.  Weidner never filed the objections with the court, however, nor did she respond to the plaintiffs' motion.  That same day, the plaintiffs filed a list of

their objections to defendant SunSouth's exhibit list.  SunSouth's exhibit list, like its objections to the plaintiffs' exhibits, had not previously been filed with the district court.

On February 16, 2016, the district court entered an order addressing the motion for clarification.  The district court found that defendant SunSouth had continued to fail to comply with the district court's requirements, without explanation.  Accordingly, the district court stated that it had "no choice but to impose sanctions."  The district court declared that SunSouth had (1) waived its right to submit objections to plaintiffs' exhibit and witness lists, except for the one deposition that was filed just after midnight on February 13, (2) waived its right to submit its own witness and exhibit lists, and (3) waived its right to submit proposed jury instructions or a proposed verdict form.  The district court clarified that it was sanctioning SunSouth "because of repeated noncompliance, a late filing that did not comply with the Court's Order substantively, and the fact that SunSouth still has not complied or offered any explanation for its failure to do so."

The trial began on February 22, 2016.  On the morning of the first day, the district court addressed defense counsel Weidner's conduct on the record.  The district court reminded Weidner that she and her co-counsel had already been "excused" at the pretrial conference from sanctions previously imposed.  The district court then recounted Weidner's continued failure to file witness or exhibit

8

lists or objections to the plaintiffs' lists, and stated: "I have given you, Ms. Weidner, multiple opportunities to comply with my orders, and you haven't done that." The district court continued:

> You can't waltz in here today and expect me to excuse the failures to comply with my order. I mean, I'm not going to condone that, Ms. Weidner. I mean, there are sanctions that go along with that sort of thing, even if it's very harsh to your client, which I don't want to happen. I mean, your client deserves better representation, frankly.

The district court informed Weidner that it was going to enter monetary sanctions against her. Weidner replied, "I think that's the appropriate sanction." She continued:

> I was just going to point out that under Rule 16, that the sanction really is a monetary sanction against me, and it is – that is the proper sanction. I have a United States Supreme Court case that says it is solely a monetary sanction that should be entered against an individual for failing to comply with the pretrial order. And so it is – mea culpa, it is mine – it should be my sanction.

The district court clarified later that its imposition of monetary sanctions on Weidner constituted a <u>sua sponte</u> reconsideration of its February 16 order striking SunSouth's exhibit and witness lists. The district court explained, addressing Weidner, that "I did not want your clients so prejudiced by your inability to follow the Court's order." The district court also stated that it decided to fine Weidner "as opposed to gutting her client's case."

9

Through the first week of trial, the district court gave Weidner additional extensions of time to provide her defense exhibits and exhibit list to the plaintiffs. Problems persisted, however, and the defense exhibits and list were not completed. As the second week of trial began, and the problems with the defense exhibits still had not been rectified, the district court directed plaintiffs' counsel to organize defendant SunSouth's exhibits and to draft SunSouth's exhibit lists. When SunSouth objected, the district court responded:

> There are rules, and there are reasons for the rules and there are reasons for the deadlines, and you all have completely ignored those rules and deadlines. I mean, I have bent over backwards to try to help SunSouth, but I'm done. These rules and these deadlines have to have meaning.

2.    The Rationale for the Monetary Sanction

In light of this conduct, the district court issued the sanctions order on October 31, 2016. In the order, the district court recited the above facts in considerable detail. The district court then found that because of Weidner's conduct, (1) the work involved in the case was multiplied, (2) the district court was "severely impacted" in its ability to evaluate objections and legal arguments during trial, (3) the jury was often kept waiting while the district court addressed issues that should have been raised prior to trial, and (4) the plaintiffs' trial preparation was impeded. The district court also noted that when given opportunities to explain her conduct, Weidner "inevitably blamed opposing counsel." The district

10

court concluded that, "[r]egardless of whether these problems were born of incompetence or impertinence . . . Ms. Weidner's repeated pattern of conduct rose to willful disregard of the court's deadlines and orders tantamount to bad faith, which adversely impacted the trial."

### 3    The Sanctions

The district court imposed sanctions separately on SunSouth and on Weidner.

As to SunSouth, the district court directed the bank to pay, pursuant to Rule 16(f)(2), the costs and attorneys' fees "reasonably incurred by Plaintiffs' counsel in attempting to decipher and cross reference SunSouth's exhibit list . . . and for time spent preparing SunSouth's exhibit list and organizing SunSouth's exhibit binders." The district court stated that the specific amount of fees would be entered by separate order, after the parties had the opportunity to provide an accounting and any objections thereto. The parties later agreed on the amount of fees for which SunSouth was responsible, and the district court accepted their accounting. The sanctions against SunSouth are therefore resolved and are not part of this appeal.

Separately, the district court imposed a "fine" of $5,000 on Weidner personally, to be paid directly to the district court. The district court found that no lesser sanction would adequately punish Weidner's conduct.

11

4.    Weidner's Appeal

Weidner now brings this appeal.  She argues that the sanctions order deprived her of due process and an opportunity to be heard, and that the order constituted an abuse of discretion because it was not based upon sufficient findings and explanation.  SunSouth has not appealed.

## II.    DISCUSSION

The district court provided alternate bases for its sanctions order: namely, Rule 16(f), and its inherent authority to manage its cases.  We address each basis in turn.

## A.    Rule 16(f)

We review a district court's decision to impose or not impose sanctions under Rule 16(f) for abuse of discretion.  United States v. Samaniego, 345 F.3d 1280, 1284 (11th Cir. 2003).  We review de novo the argument that the sanctions imposed by a district court violated due process.  Serra Chevrolet, Inc. v. General Motors Corp., 446 F.3d 1137, 1147 (11th Cir. 2006).

Rule 16(f) permits a district court to issue "any just orders" if, among other things, a party fails to obey a scheduling or other pretrial order.  Fed. R. Civ. P. 16(f)(1)(C).  The rule also requires a district court to order a party, its attorney, or both to pay the reasonable expenses incurred due to any noncompliance with Rule 16 generally.  Fed. R. Civ. P. 16(f)(2).

The rule was "designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation." Samaniego, 345 F.3d at 1284 (quoting Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir. 1985)). District courts have discretion to decide if there is a pattern of delay or a deliberate refusal to comply with court orders that justifies a sanction. Id. In addition, a district court need not make a finding of bad faith before doing so. Giovanno v. Fabec, 804 F.3d 1361, 1366 n.5 (11th Cir. 2015). In Giovanno, for example, we concluded that a district court had "ample reason" to enter a Rule 16(f) default judgment against a defendant who failed to contact his attorney or otherwise participate in the case for over a year, and who failed to provide any explanation for his absence, even though the district court made no express finding of bad faith. Id. at 1365-66.

Nevertheless, a district court's broad discretion to impose sanctions or otherwise manage its affairs is subject to "the most fundamental safeguard of fairness," due process. See Serra, 446 F.3d at 1151 (discussing Rule 37 sanctions).

Weidner has not shown that the district court abused its discretion in imposing the $5,000 fine. The sanctions order detailed a course of conduct, spanning several months, in which Weidner repeatedly failed to comply with court orders and deadlines. The district court's account of events is supported by the record. Although Weidner argued to the district court, and now argues on appeal,

13

that her missed deadlines and other lapses were the fault of the plaintiffs or of the district court, it was not an abuse of discretion for the district court to find, based on this record, that Weidner exhibited a willful disregard of deadlines such that a monetary sanction was appropriate.  Samaniego, 345 F.3d at 1284; see Giovanno, 804 F.3d at 1365.

It is also worth noting that the sanctions order came only after the district court sua sponte reconsidered its initial order barring SunSouth from presenting witnesses or exhibits, objecting to plaintiffs' exhibits, or submitting proposed jury instructions.  In other words, the district court, after reflection, decided against "gutting" SunSouth's defense case due to Weidner's conduct.  This supports the conclusion that the sanctions order was carefully considered, tailored to Weidner's conduct, and not outside the district court's discretion.

Nor was Weidner deprived of due process.  To the contrary, the district court provided ample and repeated warnings that sanctions might be coming, and also provided Weidner with several opportunities to be heard.  Before issuing the sanctions order, the district court issued a written order to show cause why sanctions should not be imposed, heard argument on the show-cause order, warned the parties that further noncompliance with court orders would result in sanctions, and gave Weidner several more chances to explain herself at trial.  Moreover, during one of her opportunities to be heard, Weidner acknowledged her own "mea

14

culpa" and asserted that a monetary sanction against her would be appropriate. It is difficult to see how Weidner could be deprived of an opportunity to be heard on the issue, when she earlier agreed on the record with the district court's course of action.

Our decisions in Serra Chevrolet and Carlucci v. Piper Aircraft Corp., Inc., 775 F.2d 1440 (11th Cir. 1985) do not help Weidner. In Carlucci, we reversed and remanded a district court's imposition of a $10,000 sanction under Rule 37(b). Carlucci, 775 F.2d at 1453-54. Rule 37(b) provides for the payment of "reasonable expenses, including attorney's fees, caused by the failure" of an attorney or party to cooperate in discovery. Fed. R. Civ. P. 37(b)(2)(C). The $10,000 award in Carlucci purportedly represented those fees and expenses. Id. at 1446, 1453-54. The district court, however, did not explain how it had arrived at that amount, beyond finding that the attorney must have been paid a "considerable" fee for his representation. Id. at 1446. In reversing and remanding, this Court made clear that its sole basis for doing so was the district court's failure adequately to explain the sum of $10,000. Id. at 1453-54.

Rule 16(f), the sanctions rule at issue here, also requires that a district court assess reasonable expenses and attorney's fees arising from any noncompliance with Rule 16's requirements for pretrial conference. Fed. R. Civ. P. 16(f)(2). But the district court complied with that portion of the rule, when it assessed

15

reasonable fees and expenses against SunSouth and directed the parties to come together on the amount of those fees and expenses. The $5,000 fine imposed on Weidner was a punitive fine imposed in addition to reasonable fees and expenses, issued under the district court's authority to enter "any just orders" when a party or attorney fails to obey a scheduling or other pretrial order. Fed. R. Civ. P. 16(f)(1). The district court found that the sum of $5,000 – a relatively modest amount – was the minimum amount that would punish Weidner's disregard of the pretrial process. The rule does not require a more particular accounting.

In Serra Chevrolet, this Court vacated and remanded a discovery sanctions order against defendant General Motors Corporation ("GM") that (1) fined GM $700,000, and (2) struck certain affirmative defenses. Serra Chevrolet, Inc., 446 F.3d at 1152-53. As to the fine, the district court had originally fined GM $50,000 for each day that it was out of compliance with discovery orders, but later, after finding that GM had been noncompliant for 98 days, lowered the fine from $4,900,000 (that is, $50,000 x 98) to $700,000. Id. at 1144, 1151-52. The district court provided no rationale, either for the amount of its $50,000-per-day fine, or for the later reduction. Id. As to the affirmative defenses, the district court struck defenses concerning the preclusive effect of earlier litigation in state court, even though the sanctioned conduct in discovery had nothing to do with those defenses. Id. at 1152. Because there was no rationale for the amount of the fine, and no

16

connection between the stricken defenses and the sanctioned conduct, this Court concluded that the sanctions violated GM's due process rights.  Id.

Contrary to Weidner's arguments, Serra Chevrolet does not stand for the proposition that any monetary sanction, in order to comport with due process, must be accompanied by a detailed accounting of how the district court arrived at that precise dollar amount.  Rather, it requires that a sanction have some rationale and some connection to the sanctioned conduct.  Here, the district court thoroughly explained its rationale for sanctioning Weidner, including its reasoning for limiting the sanction to a monetary fine on Weidner personally, rather than punishing her client as well.  This sanctions order does not run afoul of due process under Serra Chevrolet.

## B.    Inherent Authority

We review a court's exercise of its inherent power to sanction counsel for abuse of discretion.  Kornhauser v. Comm'r of Soc. Sec., 685 F.3d 1254, 1258 (11th Cir. 2012).  This means that we will not disturb a district court unless we find a clear error of judgment, or that the district court applied the wrong legal standard. Id.

Courts of justice are vested with certain implied powers to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991)

17

(quotation omitted).  One such power is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.  Id. at 44-45, 111 S. Ct. at 2132-33.

A district court's inherent power should be exercised with caution. Kornhauser, 685 F.3d at 1257.   In addition, unlike sanctions under Rule 16(f), the exercise of a district court's inherent power requires a finding of bad faith.  Id.  A district court also must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing any fees.  Id.  When the individual being sanctioned is an attorney before the district court, due process requires that the attorney be given (1) fair notice that her conduct may warrant sanctions and the reasons why, and (2) an opportunity to respond, orally or in writing, to the invocation of sanctions.  Id.

Because the boundaries of a district court's power to sanction under Rule 16(f) are very similar to the boundaries of a district court's inherent power, a sanction that is permissible under the former is likely permissible under the latter. The only additional inquiries we must make here are, first, whether the district court made the requisite finding of bad faith, and second, if so, whether that finding satisfied due process.  Id.

The district court expressly found that "Ms. Weidner's repeated pattern of conduct rose to willful disregard of the court's deadlines and orders tantamount to

bad faith." Although the district court expressed ambivalence as to whether Weidner's conduct arose from "incompetence or impertinence," either an incompetent lawyer or an impertinent lawyer may act in bad faith if she willfully disregards court orders. The district court here found that Weidner did exactly that. That finding was not an abuse of discretion based on the record, and, as discussed above, the district court allowed Weidner ample opportunity to explain herself. We find no due process violation.

## III. CONCLUSION

Based on the foregoing reasons, we conclude that the district court did not abuse its discretion or deprive Weidner of due process in imposing a sanction of $5,000. We therefore affirm the sanctions order.

**AFFIRMED.**